

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| CASTEX ENERGY PARTNERS, L P, *et al* § | CASE NO: 17-35835 | |
| Debtor(s) § | | |
| § | CHAPTER 11 | |
| § | | |
| APACHE CORPORATION § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 17-03454 | |
| § | | |
| CASTEX OFFSHORE, INC., *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

Apache Corporation filed a notice of removal of its pending suit from the 133rd Judicial District Court of Harris County, Texas, to the United States Bankruptcy Court for the Southern District of Texas. Castex Energy Partners, LP ("CEP") filed a motion to abstain and remand. Mandatory abstention is appropriate and the Court remands this proceeding to the 133rd Judicial District Court of Harris County.

### Background

This background is provided to enhance the parties understanding of the basis of the Court's decision. None of the facts contained in this background section constitute findings of fact by the court.

*Purchase of Property*

In 2011, CEP and Apache purchased oil and gas producing property and infrastructure as a joint venture in the low-water areas of the Atchafalaya Bay. (ECF No. 16 at 5). To determine the rights and responsibilities of the parties, CEP and Apache entered into several Joint Operating Agreements ("JOAs") that dictated which party would operate a given well and which

would be billed under a Joint Interest Billing Statement ("JIB") for its share of the operating expenses. (ECF No. 16 at 5). For example, the JOA on the Marathon Wells designated Castex Energy Inc. ("CEI") as the operator, giving CEI the right to bill Apache for its share of the operating expenses through a corresponding JIB. (ECF No. 16 at 5). Conversely, the Potomac Wells JOA named Apache the operator, which then billed CEI for its share of operating costs through a JIB. (ECF No. 16 at 5). Despite this arrangement, two events triggered an unraveling of the joint venture that led to litigation between the parties.

*Belle Isle Facility*

Early in the relationship, the parties identified a problem—the existing natural gas processing infrastructure was inadequate to handle the volume that the joint venture expected to produce from its Atchafalaya Bay property. (ECF No. 16 at 6). To remedy this problem, the parties decided to construct the "Belle Isle Facility" in October 2012 to efficiently process the natural gas they produced. (ECF No. 16 at 6). The parties agreed that Apache would operate Belle Isle and ownership of the facility would be split with Apache owning 75% and CEI owning the remaining 25%. (ECF No. 16 at 6). As the operator, Apache originally estimated the cost of Belle Isle's construction at $47,800,000.00. (ECF No. 16 at 6). However, as construction progressed, Apache encountered significant difficulties and total construction costs allegedly exceeded $148,000,000.00. (ECF No. 16 at 6).

*Potomac #3 Well*

In January 2014, CEP proposed to drill a new well in the Atchafalaya Bay area. (ECF No. 16 at 7). The terms of the JOA named Apache as the operator with CEP paying its proportionate costs through JIBs. (ECF No. 16 at 7). Initial cost projections for completing the well totaled $25,000,000.00. (ECF No. 16 at 7). Unfortunately, the drilling and completion of

the well was more difficult than anticipated, causing actual costs to double to nearly $50,000,000.00. (ECF No. 16 at 7). Additionally, although the well began producing some gas, within sixty days production ceased when the well began producing water and then sanded up. (ECF No. 16 at 7). The loss of the Potomac #3 well purportedly resulted in the loss of the underlying reservoirs.

The cost overruns and failures of these two projects led to a dispute between the parties. CEP demanded that Apache account for the excess costs involved in Belle Isle and Potomac #3. (ECF No. 16 at 8). After Apache refused, CEP allegedly began withholding JIB payments due to Apache under the terms of JOAs unrelated to Belle Isle and Potomac #3. (ECF No. 16 at 8). In response, Apache allegedly withheld JIBs due to CEI on other JOAs where CEI was the named operator. (ECF No. 16 at 8). The joint venture continued to own this property until November 2014 when Apache sold its interest to Texas Petroleum Investment Company, which currently co-owns the property with CEP. (ECF No. 16 at 5 n. 2).

### State Court Suit

On August 19, 2015, Apache filed a civil suit in the 133rd Judicial District Court of Harris County, Texas, against several Castex affiliates: CEP, CEI, Castex Offshore, Inc. ("COI"), Castex Energy 2008, and Castex Development Fund, LP (collectively known as "Castex"). (ECF No. 1 at 2). Apache alleged that Castex was liable to it for $18,000,000.00 due to material breaches of thirteen JOAs stemming from Castex's failure to pay amounts due under the JIBs. (ECF No. 1 at 2).

On September 9, 2015, Castex answered Apache's complaint and filed a counterclaim alleging that Apache committed fraud and breached its fiduciary duty to act as a reasonably

prudent operator in constructing Belle Isle, and that Apache's negligence led to the cost overruns and loss of the Potomac #3 Well. (ECF No. 16 at 6–7).

Apache answered Castex's counterclaim and filed a jury demand with the Harris County District Court. (ECF No. 16 at 9). On November 9, 2015, Apache filed a motion to designate Foster Wheeler USA Corp. as a responsible third party, claiming that any liability on Apache's behalf was due to its reliance on Foster Wheeler. (ECF No. 1 at 2).

In the intervening months, the parties engaged in significant discovery in anticipation of an October 2017 trial date in Houston. (ECF No. 16 at 12). However, before the trial date arrived, Hurricane Harvey made landfall and severely impacted Harris County's judicial system. (ECF No. 16 at 12). The lasting effects of the Hurricane forced the Harris County District Court to delay the parties' trial until May 2018. (ECF No. 16 at 13).

*Castex's Bankruptcy Filing*

On October 16, 2017, CEP, COI, and other Castex affiliates (collectively known as the "Castex Debtors") filed chapter 11 bankruptcy petitions, halting the state court proceeding. (ECF No. 22 at 5).

On December 20, 2017, Apache filed two proofs of claim in the Castex Debtors' bankruptcy proceeding. (ECF No. 22 at 5). Proof of Claim No. 82 claims $39,596.38 owed by COI while Proof of Claim No. 83 claims $18,457,588.00 owed by CEP. (ECF No. 22 at 5). Both of Apache's proofs of claim are founded in the same theory as its state court suit—that the Castex Debtors owe Apache approximately $18,000,000.00 in unpaid JIBs due under the JOAs. (ECF No. 22 at 5).

Apache also removed its state court lawsuit from the Harris County District Court to this Court on December 1, 2017. (ECF No. 1 at 1). After receiving notice of removal, the Harris County District Court removed the trial setting from its docket. (ECF No. 22 at 11).

On December 15, CEP filed its motion to abstain and remand arguing that, under 28 U.S.C. §§ 1334(c)(1), (2) and 1452(b), both mandatory and permissive abstention doctrines require the Court to remand the case to the Harris County District Court.

The parties presented oral arguments on January 9, 2018 and the Court requested additional briefing by January 16, 2018, on the issue of whether the Castex Debtors had waived the right to a jury trial by filing for bankruptcy. The Court took this matter under advisement on January 17, 2018.

## Jurisdiction

The District Court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

### *Mandatory Abstention*

Bankruptcy courts are courts of limited jurisdiction, competent to hear cases arising under, arising in, and related to title 11. 28 U.S.C. §§ 157(a), 1334(b); *Stern v. Marshall*, 564 U.S. 462, 473 (2011). Mandatory abstention, defined by statute, marks the boundaries of the exercise of this jurisdiction and requires courts to remand proceedings in cases where:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under

> this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c). The Fifth Circuit has interpreted this statute to require mandatory abstention when: "(i) the claim has no independent basis for federal jurisdiction other than § 1334(b); (ii) the claim is a non-core proceeding . . .; (iii) an action has been commenced in state court; and (iv) the action could be adjudicated timely in state court." *In re Moore*, 739 F.3d 724, 728–29 (5th Cir. 2014) (quoting *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007)).

The Castex Debtors claim that the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) are satisfied in this case. (ECF No. 16 at 13–23). Apache argues that this dispute constitutes a core proceeding that cannot be timely adjudicated in state court, making abstention and remand inappropriate. (ECF No. 22 at 7–13).

Federal Jurisdiction

The first requirement of mandatory abstention is that no independent basis for jurisdiction exist other than 28 U.S.C. § 1334(b). *Id*. Federal courts are courts of limited jurisdiction, requiring both constitutional and statutory authority to establish subject matter jurisdiction. *See* Erwin Cherminsky, Federal Jurisdiction § 5.1 (7th ed. 2016). The two non-bankruptcy related independent sources of subject matter jurisdiction are federal question jurisdiction and diversity jurisdiction. *Id*. at §§ 5.2–5.3.

Federal question jurisdiction is codified in 28 U.S.C. § 1331 and grounded in the notion that the United States may "create courts to enforce its own laws." *Id*. at § 5.2. Apache's original state court claim asserted breach of contract against Castex while Castex's counterclaim asserted breach of contract, fraud, fraudulent inducement, negligence, and negligent

misrepresentation against Apache. (ECF Nos. 1 at 2; 16 at 9). All of the claims in the parties' original complaints allege state law causes of action and do not invoke federal question jurisdiction. *See* 28 U.S.C. § 1331.

A second source of subject matter jurisdiction is diversity jurisdiction, which allows federal courts to hear disputes among citizens of different states if the amount in controversy is greater than $75,000.00. 28 U.S.C. § 1332. When considering the citizenship of a corporation, the statute dictates "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1). Here, both Apache and all of the Castex entities have their principal place of business within the same state, Texas, eliminating the possibility of diversity jurisdiction.

Accordingly, no independent basis for jurisdiction exists beyond 28 U.S.C. § 1334(b). Castex has established the first requirement for mandatory abstention.

Non-core Proceeding

The second requirement of mandatory abstention is that the claim must be a non-core proceeding. *In re Moore*, 739 F.3d at 728–29. Core proceedings arise under title 11, or arise in a case under title 11. 28 U.S.C. § 157(a). Section 157 provides bankruptcy judges with the authority to issue a final judgment on core proceedings. § 157(b)(2); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1940 (2015). On the other hand, non-core proceedings are "otherwise related to a case under title 11." § 157(c)(1). Absent the consent of all parties, bankruptcy courts may only submit proposed findings of fact and conclusions of law for recommendation to the district court in non-core proceedings. § 157(c)(1), (2).

In *In re Wood*, the Fifth Circuit distinguished core and non-core proceedings: "a proceeding is core under Section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." 825 F.2d 90, 97 (5th Cir. 1987). "[C]ontroversies that do not depend on the bankruptcy laws for their existence—suits that could proceed in another court even in the absence of bankruptcy—are not core proceedings." *Id*. at 96.

In this case, the suits between the parties were initiated in state court. Apache filed its initial complaint, premised on a breach of contract for unpaid JIBs, in state court. (ECF No. 1 at 2). Additionally, Castex's counterclaim against Apache is similarly based on state law causes of action such as breach of contract, fraud, and negligence. (ECF No. 16 at 3). Had Castex not filed for bankruptcy, these suits would have proceeded to the merits of the claims in state court. Accordingly, under the Fifth Circuit's standard, they are quintessential non-core claims as described in *In re Wood*.

Apache disputes this conclusion and urges the Court to deem its claims core proceedings. In support of this assertion, Apache points to its proof of claim filed in CEP's bankruptcy case, which concerns administration of CEP's bankruptcy estate, the allowance and disallowance of claims against CEP, and affects adjustment of the creditor-debtor relationship. (ECF No. 22 at 9). Apache believes its proof of claim is adequate to make this proceeding core. (ECF No. 22 at 9).

The Supreme Court directly addressed a similar argument in *Stern v. Marshall*, 564 U.S. 462, 495 (2011). In *Stern*, a widow filed a law suit against her husband's son in Texas state court, alleging that her husband was fraudulently induced to sign a living trust that specifically exempted her from her husband's fortune. *Id*. at 470. Later, the widow filed for bankruptcy in

California prompting the son to initiate an adversary proceeding alleging defamation as well as a proof of claim in the bankruptcy case. *Id*. The widow filed a counterclaim against the son in the adversary proceeding alleging tortious interference with her husband's will. *Id*. The son claimed that the bankruptcy court lacked authority to rule on the widow's counterclaim. *Id*.

The widow argued that, by filing a proof of claim, the son participated in the bankruptcy proceeding, which in turn empowered the bankruptcy court's to adjudicate her counterclaim. *Id*. at 495. The Supreme Court dismissed this argument holding,

> There was never any reason to believe that the process of adjudicating [the son's] proof of claim would necessarily resolve [the widow's] counterclaim. . . . [E]ven assuming the Bankruptcy Court would (as it did) rule in [the widow's] favor on that question, the court could not enter judgement for [the widow] unless the court additionally ruled on the questions of whether Texas recognized tortious interference with an expected gift as a valid cause of action, what the elements of that cause of action were, and whether those elements were met in this case.

*Id.* at 497–98.

Similarly to *Stern*, Apache filed a proof of claim alleging approximately $18,000,000.00 owed for a breach of contract due under the JOAs. (ECF No. 22 at 4). Assuming the Court addressed this allegation and ruled on the merits, the bulk of Castex's counterclaim would still remain pending and unanswered. Castex's claim is founded on Apache's alleged fraud, fraudulent inducement, and negligence in constructing the Belle Isle Facility and operating the Potomac #3 well. (ECF No. 16 at 6–7). As in *Stern*, the Court would have to engage in a separate analysis to determine the validity of Castex's counterclaim. *Id*. at 498. Thus, Apache cannot rely on its proof of claim alone to establish that this dispute is a core proceeding.

Although allowance or disallowance of the proof of claim is a core matter, the counterclaim is not a core matter. The Court must determine the disposition of this motion when the adversary proceeding involves both core and non-core matters.

Apache also indicated that its claim for breach of contract is so closely related to Castex's counterclaim that they are essentially one in the same and thus should be adjudicated together. According to Apache, Castex intentionally withheld the JIBs that led to Apache's breach of contract claim to account for Apache's cost overruns on the Bell Isle Facility and Potomac #3 wells. (January 9, 2018 Hearing at 11:01 a.m.). To Apache, resolving one side of the dispute necessarily would lead to resolving the other.

However, this argument too was addressed in *Stern*, 564 U.S. at 470. The widow's counterclaim asserted truth as a defense, and thus was directly related to the son's defamation adversary proceeding. *Id*. Applying Apache's logic, resolving the son's defamation dispute would necessarily require addressing the widow's defense of tortious interference. Nevertheless, the Supreme Court held that, despite the link between the claim and counterclaim, the two issues were separate and distinct because the tortious interference claim required a court to address issues beyond the son's submitted proof of claim. *Id*. at 498. As discussed earlier, Castex's counterclaim alleges fraud, fraudulent inducement, and negligence, none of which will be fully resolved in deciding Apache's breach of contract allegations in its proof of claim. Thus, these claims remain non-core proceedings.

Even if Castex's counterclaim contains both core and non-core proceedings, the result still requires the Court to remand the case. When an adversary proceeding includes a non-core matter, the bankruptcy court may not adjudicate the non-core matter without the consent of the parties. *Sharif*, 135 S.Ct. at 1940. If a party does not consent, a bankruptcy court may only "submit proposed findings of fact and conclusions of law to the district court" which the district court then reviews de novo. 11 U.S.C. § 157(c)(1); *Sharif*, 135 S.Ct. at 1940.

"The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'" *In re Exide Tech.*, 544 F.3d 196, 206 (3d Cir. 2008). The Court's task is to assess each claim independently and decide whether it is core or non-core. *In re Best Reception Sys., Inc.*, 220 B.R. 932, 946 (E.D. Tenn. 1998). Some courts employ a balancing test to determine whether the core or non-core claims predominate an adversary proceeding before deciding whether the court has authority to hear a proceeding. *See In re Hughes–Bechtol, Inc.*, 141 B.R. 946, 949 (Banrk. S.D. Ohio 1992); *In re Cinematronics, Inc.*, 111 B.R. 892, 901 (Bankr. S.D. Cal. 1990). However, precedent dictates the Court rejects this approach in favor of a claim by claim analysis that determines whether an individual claim is core or non-core. *In re Morrison*, 409 B.R. 384, 392 (S.D. Tex. 2009). With core claims, the Court has authority to resolve them through final orders; however, for non-core claims, the court must remand absent consent of the parties. *Id*. While not dispositive, the Court notes that the non-core matters dominate in size and complexity over the core matters in this case.

Apache's breach of contract claim is founded on its allegation that Castex has withheld payments due on JIBs as required under JOAs. (ECF No. 1 at 2). Although this alleged breach of contract is a state law claim, Apache's proof of claim in the Castex Debtors' bankruptcy brings it within an enumerated example of a core proceeding under 28 U.S.C. § 157(b)(2)(B). *See In re Best Reception Sys.*, 220 B.R. at 947 (holding that plaintiffs in an adversary proceeding who filed proofs of claim against a debtor fall within core proceedings). Thus, the Court has authority to enter final order in this core proceeding's cause of action.

On the other hand, Castex's counterclaim involves negligence, fraud, fraudulent inducement, and breach of fiduciary duty against Apache. (ECF No. 16 at 6–7). These are state law claims that were not brought in or under title 11. *See In re Petroleum Products & Serv., Inc.*,

556 B.R. 296, 302 (Bankr. S.D. Tex. 2016) (quoting *In re Wood*, 825 F.2d at 97 "The essential issue in the proceeding is whether the defendants are liable to the plaintiffs under state law."). However, Apache urges that Castex's counterclaims are *related to* an action brought under Title 11 because Castex's allegedly withheld its JIB payments to compensate for Apache's cost overruns cited in the counterclaim. (January 9, 2018 Hearing at 11:01 a.m.).

As discussed earlier, Apache's claim and Castex's counterclaim are independent and unrelated causes of action. Determining whether Castex breached is duties to pay under its JOAs with Apache will not resolve whether Apache was negligent or engaged in fraudulent activity in the Belle Isle and Potamac #3 projects. As a result, Castex's counterclaim is non-core and the Court lacks authority to adjudicate the claim absent the parties' consent.

Commenced in State Court

The record is clear and the parties do not dispute that the action was commenced in state court, satisfying the third element for mandatory abstention. (ECF Nos. 1 at 2; 16 at 2).

Timely Adjudication

The final requirement for mandatory abstention is that the proceeding be timely adjudicated in state court. *In re Moore*, 739 F.3d at 728–29. The parties' views on this issue differ dramatically.

Apache claims that the case was originally set for trial in Harris County District Court on July 2, 2018, but was removed from the court's docket after the notice of removal was filed. (ECF No. 22 at 11). To Apache, without a firm date scheduled on a state court docket that is already struggling under the weight of Hurricane Harvey's lingering effects, it is impossible to know when a trial may occur. (ECF No. 22 at 11). Apache also argues that equitable considerations tip the scales in its favor because adjudicating the issues in this Court eliminates

duplicative costs of separate estimation hearings for the bankruptcy case and arguments on the merits in the state court case. (ECF No. 22 at 11).

On the other hand, Castex views the July 2018 trial date as evidence that another timely scheduling is possible in state court despite the crowded docket. (ECF No. 16 at 22). Castex also claims equity is in its favor because extensive discovery has occurred that would be abrogated if this Court decided the proceeding because of differences between the Federal and Texas Rules of Evidence. (ECF No. 16 at 22).

The Ninth Circuit decided an issue of whether adjudication was timely in *In re Eastport Assoc.*, which centered on a land development dispute between the City of Los Angeles and Eastport, a land developer. 935 F.2d 1071, 1073–74 (9th Cir. 1991). After numerous delays, Los Angeles threatened to strip Eastport of its development entitlement, forcing Eastport to file for bankruptcy to stay Los Angeles's action. *Id*. at 1074. Los Angeles filed a motion to abstain and remand; the Ninth Circuit examined whether the dispute could be timely adjudicated. *Id*. at 1076. The Ninth Circuit found it material that, prior to Eastport's bankruptcy, no state court trial had commenced, and so remanding the case would require repeating any litigation that had taken place in the bankruptcy court. *Id*. at 1078.

This case presents the opposite situation faced in *Eastland*. *Id*. Here, the parties have made significant progress in state court, conducting significant discovery and establishing deadlines. (ECF No. 16 at 22). On the other hand, the dispute is in its infancy in this Court. Even if this Court hastens the proceeding by altering discovery rules to conform to the Texas rules, significant work remains to proceed to a hearing on the merits. Considering the equitable interest at stake, this decision narrowly sides with Castex due to the established progress of the proceeding in state court.

The Castex Debtors agreed to the importance of a timely adjudication at the January 9, 2018 hearing, stipulating to a state court trial date in August with the previously established state court docket control orders in place. (January 9, 2018 Hearing at 5:01 p.m.). In the event the currently assigned judge cannot try the case in August, the Castex Debtors consented to trial by a visiting judge appointed according to Texas procedures, a request previously made by Apache. (January 9, 2018 Hearing at 5:01 p.m.). However, the Castex Debtors' conditioned their consent to trial by a visiting judge based on the fact that no other party may seek a continuance before trial. (January 9, 2018 Hearing at 5:01 p.m.).

Timely adjudication is a factor that should not be discounted. Apache has filed an $18,000,000.00 proof of claim against the Castex Debtors, a claim that could have a significant impact on the Castex Debtors' bankruptcy case. In the interest of a timely adjudication, and to avoid unduly delaying the bankruptcy case, a trial date prior to September 2018 will assist the administration of this case.

Ultimately, Castex has carried its burden of establishing mandatory abstention. *In re Moore*, 739 F.3d at 728–29. Accordingly, there is no need for the Court to address Castex's alternative arguments such as Apache's third party proceeding against Foster Wheeler and permissive abstention. (ECF No. 16 at 17–18, 23–28).

*Jury Trial*

During the January 9, 2018 hearing, Apache raised the issue of whether the Castex Debtors lost the right to a jury trial in the adversary proceeding as a result of filing its bankruptcy petition. (ECF No. 34 at 1–2). This issue is relevant, because the existence of a jury trial right may influence the timeliness of adjudication in federal court.

Apache claims that "[Castex's] counterclaims are integral to the restructuring of the debtor-creditor relationship and part of the claims allowance process so that [Castex's] jury trial right is extinguished as to those counterclaims." (ECF No. 34 at 5). In support of its argument, Apache points to case law anchored by the Supreme Court's decision in *Langenkamp v. Culp*, to suggest that questions integral to the restructuring of the debtor-creditor relationship are "part of the claims-allowance process which is triable only in equity." 498 U.S. 42, 44–45 (1990); (ECF No. 34 at 3–4).

Castex, on the other hand, asserts that its right to a jury trial remains intact and that the present dispute is distinguishable from *Langenkamp* and the cases Apache cited. (ECF No. 35 at 6–9). Castex cites to the facts that the non-debtor Castex entities filed the counterclaim and that the parties' suits are founded on different causes of action as points of difference between this case and *Langenkamp*. (ECF No. 35 at 6–9).

In *Langenkamp*, a debtor paid prepetition debts to creditors that the trustee attempted to recover as avoidable transfers made within ninety days of the debtor's bankruptcy filing under 28 U.S.C. § 547(b). *Id*. at 43. The issue before the Supreme Court was whether other creditors who had filed proofs of claim against the debtor were entitled to a jury trial to resolve their claims. *Id*. at 44. The Supreme Court held that by submitting claims against the bankruptcy estate, the creditors availed themselves to the "equitable jurisdiction of the Bankruptcy Court" and were not entitled to a jury trial. *Id*. at 45. However, the Court applied this conclusion to a situation in which a creditor filed a claim against a bankruptcy estate and the "creditor is met, in turn, with a preference action from the trustee[.]" *Id*. at 44. In that case, the "creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-

creditor relationship through the bankruptcy court's equity jurisdiction." *Langenkamp*, 498 U.S. at 44 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 (1989)).

Apache proposes that Castex's counterclaims against it fit within the reasoning in *Lankenkamp* because a ruling on Apache's proof of claim in Castex's bankruptcy will inevitably require adjudicating Castex's counterclaims. (ECF No. 34 at 6). Apache states that "the Court would necessarily need to rule on the merits of the Debtors' claims regarding the Belle Isle facility, and whether the Debtors improperly withheld payments of JIBs . . . to determine whether the Debtors owe Apache for that portion of Apache's claims." (ECF No. 34 at 8).

Apache's argument is distinguishable from those in *Langenkamp*. In *Langenkamp*, the trustee's action was filed as a direct response on the creditor's proof of claim, and resolving one would necessarily resolve the other. *Id*. at 45. However, in this case, Apache's suit on unpaid JIBs and Castex's counterclaims alleging negligence, fraud, and other state law causes of action exist independently of one another. Resolving whether Castex breached its duties to pay JIBs under its JOAs involves separate factual determinations than whether Apache engaged in fraud, breach of contract, or negligence in constructing the Belle Isle facility and Potomac #3 well. Although a common factual event—Castex's withholding payment on JIBs—precipitated both Apache's suit and Castex's ensuing counterclaim, there is nothing linking the *legal causes of action* between the parties into the same adjudication as Apache suggests.

In *U.S. Bank Nat'l Ass'n v. Verizon Commc'n, Inc*., the Fifth Circuit addressed a debtor's right to a jury trial, holding that *Langenkamp* applied equally to debtors as well as creditors. 761 F.3d 409, 420–21 (5th Cir. 2014). The Fifth Circuit stated that a debtor's rights in bankruptcy must parallel a creditor's, so a debtor who sought the protection of the bankruptcy process could not seek a jury trial similar to a *Langenkamp* creditor. *Id*. (quoting *In re Hallahan*, 936 F.2d

1496, 1505 (7th. Cir. 1991)). However, the Fifth Circuit qualified this holding, distinguishing its holding from the Supreme Court's holding in *Stern v. Marshall*. *U.S. Bank*, 761 at 424. The Fifth Circuit emphasized the difference in *Stern* was due to the fact that the debtor's counterclaim was not part of the claim resolution process and thus "would not necessarily be resolved in the process of ruling on a creditor's proof of claim." *Id*. at 424.

The facts in this case parallel *Stern* rather than *U.S. Bank*. As discussed earlier, Castex filed its counterclaim prior to the bankruptcy process. However, the debtor in *U.S. Bank*, filed for bankruptcy and sought a jury trial regarding a fraudulent transfer—a cause of action rooted in bankruptcy. *Id*. at 416. Castex, unlike the debtor in *U.S. Bank*, filed its counterclaim based on state law causes of action in state court outside the bankruptcy process. Additionally, resolving Apache's breach of contract claim will not result in the adjudication of Castex's state law claims of fraud and negligence. Similar to *Stern*, Castex's counterclaim lies outside the bankruptcy process. Accordingly, Castex's did not waive its right to a jury trial by filing its bankruptcy petition.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **February 1, 2018.**

 _____
 Marvin Isgur
 UNITED STATES BANKRUPTCY JUDGE